RAILWAY SPEED RECORDER CO. v. CHICAGO PNEUMATIC TOOL CO.

(Circuit Court, E. D. Pennsylvania.   December 5, 1903.)

No. 27.

1. CORPORATIONS—CONTRACTS—EXECUTION—SIGNATURE BY AGENT—PERSONAL LIABILITY.

Where a contract sued on stated that it was between D., of defendant tool company, whose principal office and address was at Chicago, Ill., party of the first part, and plaintiff, party of the second part, and recited that whereas D. had acquired sole and exclusive right to manufacture and sell a certain device, it was agreed that defendant should manufacture the same under certain stipulations, and the contract was signed by J. W. D., party of the first part, and plaintiff corporation, party of the second part, the contract was the personal obligation of D., and not the obligation of defendant company, with which D. was connected.

Stone & Stone, for plaintiff.

John R. Bennett, for defendant.

J. B. McPHERSON, District Judge.   Looking at the plaintiff's statement alone—and the court cannot go outside the record upon the hearing of a demurrer—it is plain that the tool company does not appear to be a party to the contract sued upon.   The writing is as follows:

"This memorandum of agreement, made and entered into this 3rd day of January, A. D. 1901, by and between J. W. Duntley of the Chicago Pneumatic Tool Company, whose principal office and address is Chicago, Illinois, party of the first part, and the Railway Speed Recorder Company, whose principal office and address is Kent, Ohio, party of the second part, Witnesseth:

"Whereas, J. W. Duntley has acquired the sole and exclusive right to manufacture and sell that certain device known as the 'Schmucker Rock Drill,' and

"Whereas, the said party of the first part is desirous of having the said party of the second part manufacture for the account of the said party of the first part the drill above referred to, and

"Whereas, to provide for the manufacture of said drill by said party of the second part it will necessitate certain additions to and changes in the plant of the said party of the second part, and

"Whereas, the said party of the first part recognizes the necessity of large additional expenditures by the party of the second part in order to carry out this contract,

"It is therefore agreed by and between the parties hereto as follows:

"First:   The Railway Speed Recorder Company hereby agrees to manufacture the same; that the materials used in the construction of said drills shall be in all first class; and the construction of said drills to be in workmanlike manner, to meet the approval of the party of the first part.

"Second:   It is mutually understood and agreed by and between the parties hereto that the period of duration of this contract shall be one year from and after the first day of January, A. D. 1901, with the understanding that the party of the first part will furnish orders to the party of the second part at a minimum of one hundred (100) drills per month.

"Third: The consideration to be paid by the party of the first part for each and every one of said drills, to which consideration the party of the second part hereby agrees, shall be based on the cost of manufacturing the first two hundred (200) drills, to which cost there shall be added a manufacturer's profit of not less than twenty-five (25) per cent.

"Terms of payment to be one-half (½) cash on all goods shipped during previous month. Notes for ninety (90) days to be given for balance.

"In witness whereof the parties hereto have caused this agreement to be signed in duplicate by their respective representatives this 3rd day of January, 1901.                          J. W. Duntley,
                                                   "Party of the First Part.
                                    "The Railway Speed Recorder Co.
                                                   "C. L. Howard, Prest.
                                              "Party of the Second Part."

This is apparently the individual contract of J. W. Duntley, and not the contract of the tool company. There are no averments in the statement that connect the defendant with this agreement, and I cannot take up the letters and the assertions of fact contained in the brief of plaintiff's counsel for the purpose of inquiring whether a cause of action against the defendant could by possibility be established at the trial. The statement shows none, and for the present that is sufficient. In effect, I am asked by the plaintiff to examine certain evidence, and to decide in advance of the trial whether the defendant's liability under a contract made by another person in his own name has been prima facie made out. Manifestly, a court cannot be expected to advise the plaintiff concerning the strength of his case. This is the function of counsel.

The demurrer is sustained.